**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE**

| | | |
|---|---|---|
| PRODUCTOS LAMINADOS DE MONTERREY S.A. DE C.V.,<br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br>Defendant,<br><br>and<br><br>NUCOR TUBULAR PRODUCTS INC. and ATLAS TUBE AND SEARING INDUSTRIES,<br>Defendant-Intervenors. | | Court No. 20-00166 |

**REPLY BRIEF**
**IN SUPPORT OF PLAINTIFF'S RULE 56.2 MOTION**
**FOR JUDGMENT UPON THE AGENCY RECORD**

David E. Bond
Allison J.G. Kepkay

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

June 11, 2021

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Prolamsa Submitted Quantitative Evidence Supporting Its Reported LOTs ..... 2

B. In Any Case, the Department Did Not Ask Prolamsa to Support Quantitative Evidence to Support Its Reported LOTs ..... 3

1. The Department's questionnaires did not request quantitative information ..... 3

2. The Department did not issue any deficiency notices regarding the evidence submitted regarding LOT ..... 6

C. Defendant and Defendant-Intervenors Fail to Demonstrate that the Department's Determination was Based on Substantial Evidence ..... 8

1. Defendant's and Defendant-Intervenors' defense of the Department's analysis misinterprets the substantial evidence standard ..... 8

2. Defendant Intervenors' post hoc rationalizations of the Department's determination are improper ..... 10

D. Defendant-Intervenor's Post Hoc Critique of Prolamsa's Qualitative Evidence is Meritless ..... 11

III. CONCLUSION AND RELIEF SOUGHT ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allegheny Ludlum Corp. v. United States*,
112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000) ....................9

*Burlington Truck Lines v. United States*,
371 U.S. 156 (1962)....................10, 11

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States,*
308 F. Supp. 3d 1297 (Ct. Int'l Trade 2019) ....................7, 8

*Chr. Bjelland Seafood A/S v. United States*,
19 C.I.T. 35 (Ct. Int'l Trade 1995) ....................10

*Dillinger France S.A. v. United States*,
350 F. Supp. 3d 1349 (Ct. Int'l Trade 2018) ....................10

*Hyundai Heavy Indus., Co. v. United States*,
332 F. Supp. 3d 1331 (Ct. Int'l Trade 2018)....................5

*Jacobi Carbons AB v. United States*,
422 F. Supp. 3d 1318 (Ct. Int'l Trade 2019) ....................9

*Jiaxing Bro. Fastener Co., Ltd. v. United States*,
822 F.3d 1289 (Fed. Cir. 2014)....................6

*Pasta Zara SpA v. United States*,
781 F. Supp. 2d 1297 (Ct. Int'l Trade 2011) ....................10

*Shandong Huarong Mach. Co. v. United States*,
29 C.I.T. 484 (2005) ....................6

*Ta Chen Stainless Steel Pipe v. United States*,
23 C.I.T. 804 (1999) ....................6

*USX Corp. v. United States*,
655 F. Supp. 487 (Ct. Int'l Trade 1987) ....................10

### STATUTES AND REGULATIONS

19 U.S.C. § 1677m(d)....................7

## ADMINISTRATIVE DETERMINATIONS

*Certain Cold-Rolled Steel Flat Products From the United Kingdom: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018*, 84 Fed. Reg. 34868 (July 19, 2019), and Accompanying Preliminary Decision Memorandum........4

*Corrosion-Resistant Steel Products From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 15114 (Mar. 17, 2020), and Accompanying Issues & Decision Memorandum........4, 5

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 41962 (July 13, 2020) and Accompanying Issues & Decision Memorandum........passim

*Magnesium From Israel: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 84 Fed. Reg. 32712 (July 9, 2019), and Accompanying Preliminary Decision Memorandum........4

*Polyethylene Terephthalate Sheet from the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 12500 (Mar. 3, 2020), and Accompanying Preliminary Decision Memorandum........5

*Utility Scale Wind Towers from Canada: Preliminary Affirmative Determination of Sales at Less-Than-Fair-Value, Preliminary Negative Determination of Critical Circumstances, and Postponement of Final Determination and Extension of Provisional Measures*, 85 Fed. Reg. 8562 (Feb. 14, 2020), and Accompanying Preliminary Decision Memorandum........5

## I. INTRODUCTION

Plaintiff Productos Laminados de Monterrey S.A. de C.V. ("Prolamsa") replies to Defendant United States' Response Brief (ECF No. 42) ("Def. Resp. Br."); Defendant-Intervenor Nucor Tubular Products Inc.'s ("Nucor") Response Brief (ECF Nos. 40, 41) ("Nucor Resp. Br."); and Defendant-Intervenors Atlas Tube and Searing Industries' ("Atlas Tube") Response Brief (ECF No. 37, 38) ("Atlas/Searing Resp. Br."). We refer to underlying documents from the record using the abbreviated names set forth in the Memorandum of Points and Authorities in Support of Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record (ECF Nos. 31, 32) ("Prolamsa Br.").

## II. ARGUMENT

The outcome of this appeal turns on whether the Department's rejection of Prolamsa's level of trade ("LOT") claim based on the alleged lack of quantitative evidence was supported by substantial evidence. As discussed in detail in Prolamsa's Brief, Prolamsa did, in fact, submit quantitative evidence, as well as qualitative evidence, supporting the LOT reported in its sales databases. Moreover, Prolamsa submitted quantitative evidence despite the fact that the Department never requested such information nor identified any related deficiency in its responses. The *Final Results* are devoid of any indication that the Department considered the quantitative or the qualitative evidence supporting the LOT claim. *See* Prolamsa Br. at 13-19. Defendant's and Defendant-Intervenors' responsive briefs fail to address these defects in the *Final Results*.

First, contrary to Defendant's and Defendant-Intervenors' claims, the Department did not expressly require quantitative evidence to support a LOT claim. The Department made no such request in the initial questionnaire, and did not request any clarification or supplemental

information after Prolamsa submitted quantitative information in its *Supplemental Section A Response*. Moreover, at the time Prolamsa was preparing its response to the initial questionnaire, the Department had not articulated a requirement for quantitative evidence to define LOTs. While Prolamsa may retain the burden to establish its LOT claim, this Court's rulings establish that the Department still must meet its statutory obligation to request additional information if it believes that a submission is deficient. If failed to do so here.

Second, Defendant's and Defendant-Intervenors' defense of the Department's reasoning regarding quantitative evidence does not apply the appropriate standard of review. Because the Department did not consider and weigh the quantitative evidence on the record in reaching the *Final Results*, its reasoning was inadequate and its decision was not supported by substantial evidence. Moreover, Nucor and Atlas Tube improperly offer post hoc rationalizations as to why Prolamsa's quantitative evidence was inadequate, which they did not raise before the Department, thereby failing to exhaust their administrative remedy; and which the Department did not discuss in the *Final Results*. Accordingly, the Court should disregard these arguments.

Finally, Nucor's attempts to discredit Prolamsa's qualitative evidence supporting the LOT claim are refuted by record evidence, and certain arguments were not properly raised before the Department in the underlying proceeding of this appeal. Moreover, because the Department did not rely on arguments related to qualitative evidence to deny Prolamsa's LOT claim, Nucor's arguments are impermissible post hoc rationalizations.

**A. Prolamsa Submitted Quantitative Evidence Supporting Its Reported LOTs**

As explained in its initial brief, Prolamsa submitted a quantitative analysis in support of its LOT claim in response to the *Supplemental Section A Questionnaire*. *See* Prolamsa Br. at 10-11, 14-16. This analysis included "comparisons of selling expenses, salaries/benefits, and headcount, all demonstrating the substantially higher expenses incurred for sales made through

HM Channel 4 due to the higher intensity of selling activities, such as those required to qualify as a supplier and to coordinate customer-specific inventory and just-in-time delivery." *Id*. at 10; *see also Supplemental Section A Response* at 8 and Exhibit Supp. A-4. In addition to this selling expense analysis, Prolamsa also submitted a quantitative analysis of its inventory levels to support the increased activities related to inventory management for sales through HM Channel 4. *See* Prolamsa Br. at 10, 15; *Supplemental Section A Response* at 17 and Exhibit Supp. A-8. Thus, the Department's contention that "none of the documents provided demonstrate direct quantitative support" and that Prolamsa "has not supported its LOT claims with quantitative evidence" are squarely contradicted by the record. *Final Decision Memo* at 27.

**B. In Any Case, the Department Did Not Ask Prolamsa to Support Quantitative Evidence to Support Its Reported LOTs**

The Department rejected Prolamsa's LOT claim on the alleged absence of quantitative evidence, which the Department never requested and which was not a requirement under Department practice when the initial questionnaire was issued. Defendant and Defendant-Intervenors fail to respond adequately to these key points. Moreover, while Defendant and Defendant-Intervenors are correct that Prolamsa had the burden of establishing different LOTs, they completely overlook the correlative legal requirement that the Department must clearly request the information needed to conduct its LOT analysis and to timely notify a respondent if the submitted information is deficient.

**1. The Department's questionnaires did not request quantitative information**

Although Prolamsa submitted quantitative evidence, it did so on its own initiative. The Department never requested such evidence. Defendant's and Defendant-Intervenors' claims to the contrary are incorrect. *See* Def. Resp. Br. at 6; Nucor Resp. Br. at 17; Atlas/Searing Resp. Br. at 9.

Defendant claims that the Department "expressly requires respondents to provide quantitative evidence to support their level of trade claims . . . ." Def. Resp. Br. at 6. However, Defendant provides no citation to a question asked of Prolamsa in the review at issue. Instead, Defendant references unrelated cases in which the Department considered quantitative evidence in the context of the LOT analysis. These cases are irrelevant, however, because they do not address the record in this case.

For instance, in *Magnesium from Israel* and *Certain Cold-Rolled Steel Flat Products from the United Kingdom,* which are cited by Defendant,[1] the Department made specific requests to provide a "quantitative analysis" related to the reported LOTs. *See Magnesium From Israel: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures¸* 84 Fed. Reg. 32712 (July 9, 2019), and accompanying Preliminary Decision Memorandum at 13 (*unchanged in final*); *Certain Cold-Rolled Steel Flat Products From the United Kingdom: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018*, 84 Fed. Reg. 34868 (July 19, 2019), and accompanying Preliminary Decision Memorandum at 10 (*unchanged in final*). Such questions were not asked of Prolamsa.

Further, in *Corrosion-Resistant Steel Products from the Republic of Korea*, the Department provided details on "new" questions related to LOT that were asked in the questionnaire for that review, but were not asked in the previous review:

> Unlike the LOT questions in the prior review that had no sub-questions, ***the new LOT questionnaire*** requests that respondents provide . . . (4) a quantitative analysis showing how the expenses assigned to POR sales made at different claimed LOT impact price comparability functions; (5) a demonstration of how indirect selling expenses vary by the different LOT claimed; (6) an explanation of how the quantitative analysis provided support the claimed levels of intensity for

[1] *See also* Nucor Resp. Br. at 13.

> the reported selling activities; (7) annual historical expense data reflecting average expenses incurred during a three-year period prior to the beginning of the POR for normal expenses for a selling activity that was not performed during the POR.

*Corrosion-Resistant Steel Products From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 15114 (Mar. 17, 2020), and accompanying Issues & Decision Memorandum at Comment 4 (emphasis added). Again, the Department made no such requests of Prolamsa in the review on appeal here.

Accordingly, Defendant's generic claim that the Department "began expressly requiring quantitative evidence to support level of trade claims in 2018" is not true with respect to this particular case. Def. Resp. Br. at 10.[2] There is no evidence on this record of the Department doing so. *See Hyundai Heavy Indus., Co. v. United States*, 332 F. Supp. 3d 1331, 1342 (Ct. Int'l Trade 2018) ("{E}ach review is separate and based on the record developed before the agency in

[2] Defendant and the Department also cited other cases where the Department denied a LOT claim based on a lack of quantitative documentation, but those too are distinguishable for the same reason. For instance, the Department cited its preliminary determinations in *Polyethylene Terephthalate Sheet from the Republic of Korea* and *Utility Scale Wind Towers from Canada* as further support for requiring quantitative evidence in analyzing LOT claims. *Final Decision Memo* at 26, n. 175; *see also* Def. Resp. Br. at 11. In *Polyethylene Terephthalate Sheet from the Republic of Korea*, the Department specifically cited its requests that the respondent "{p}rovide a ***quantitative analysis*** showing how the expenses assigned to POI/POR sales made at different claimed levels of trade impact price comparability;" and "{e}xplain how the quantitative analysis . . . support the claimed levels of intensity for the selling activities reported in the selling functions chart." *Polyethylene Terephthalate Sheet from the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 12500 (Mar. 3, 2020), and accompanying Preliminary Decision Memorandum at 15 (emphasis added). And, in *Utility Scale Wind Towers from Canada*, the Department specifically cited its request that the respondent "{e}xplain how the ***quantitative analysis*** . . . support the claimed levels of intensity for the selling activities reported in the selling functions chart." *Utility Scale Wind Towers from Canada: Preliminary Affirmative Determination of Sales at Less-Than-Fair-Value, Preliminary Negative Determination of Critical Circumstances, and Postponement of Final Determination and Extension of Provisional Measures*, 85 Fed. Reg. 8562 (Feb. 14, 2020), and accompanying Preliminary Determination Memorandum at 15 (emphasis added). Again, the Department made no such requests of Prolamsa in the proceeding under appeal.

the review.") (citing *Jiaxing Bro. Fastener Co., Ltd. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2014); *Shandong Huarong Mach. Co. v. United States*, 29 C.I.T. 484, 491 (2005)).

Nucor claims that the Department's questionnaire expressly requested particular quantitative information through the one word "how" in the following question from the Section A Questionnaire:

> Explain whether the prices you charge for the subject merchandise in the U.S. market and the foreign like product in the foreign market vary depending on the channel of distribution through which you sell and/or the customer category to whom you sell. If so, please explain ***how*** prices vary and why.

Nucor Resp. Br. at 17 (emphasis added). This argument cannot be taken seriously. The Department must clearly ask for what it wants a respondent to submit. *See Ta Chen Stainless Steel Pipe v. United States*, 23 C.I.T. 804, 820 (1999) (explaining the Department's obligation of letting a respondent know "what information it really wants"). In addition, whether or not a quantitative analysis "seems crucial," Nucor Resp. Br. at 17, to establishing differences in price based on LOT is irrelevant, when Prolamsa answered the question on whether prices vary based on channel of distribution in its *Section A Response*, and the Department did not seek further clarification on this point.[3]

**2. The Department did not issue any deficiency notices regarding the evidence submitted regarding LOT**

Defendant and Defendant-Intervenors also repeatedly emphasize that Prolamsa had the burden to establish its LOT claim. *See* Def. Resp. Br. at 9, 13; Nucor Resp. Br. at 9-10, 16; Atlas/Searing Resp. Br. at 9-10. However, the fact that Prolamsa carried this burden did not

---

[3] Prolamsa explained "how prices vary and why," stating that higher prices charged for sales through HM Channel 4 "reflected the significant, additional selling activities performed in relation to sales through HM Channel 4, as well as the additional production costs incurred to manufacture the parts." *Section A Response* at A-22. The Department verified this information in its original less-than-fair value HWRT investigation. *See Section A Response* at A-22 and Exhibit A-5 (Productos Laminados Sales Verification Report at pages 7-8).

absolve the Department of its statutory duty to request necessary information in its questionnaires or to inform Prolamsa of deficiencies in its responses and provide an opportunity to remedy them.

This Court's ruling in *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States* is particularly instructive on the interrelationship between a respondent's burden of supporting its claims and the Department's obligation to define the evidence needed. In that case, the Department erred because it failed to inform the respondent of deficiencies regarding the information reported to support a duty drawback adjustment. 308 F. Supp. 3d 1297, 1317-18 (Ct. Int'l Trade 2019). As the Court explained, where the Department finds that a response is deficient, it is required under 19 U.S.C. § 1677m(d) to "provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews." *Id.* at 1318. The Court also stated that a respondent's burden of proof does not diminish this statutory requirement: "***The Government's suggestion that Commerce's statutory obligation is mitigated by the respondent's burden to provide accurate information runs counter to the mandatory nature of § 1677m(d).***" *Id.* (emphasis added). Ultimately, the Court concluded that the Department erred by failing to inform the respondent "that its supplemental submission was deficient or make findings with regard to the practicability of providing . . . an opportunity to remedy or explain the deficiencies." *Id.*

In this case, the Department did not request a quantitative analysis in the initial questionnaire or any subsequent questionnaire. And even if it intended to, or found issue with the quantitative information Prolamsa placed on the record to support its LOT claim, the Department did not inform Prolamsa of this deficiency and provide a chance to respond.

Finally, Nucor argues that Prolamsa was a "sophisticated party" due to its participation in other proceedings and, therefore, the Department should be excused for not asking particular questions related to a quantitative analysis. Nucor Resp. Br. at 17-18. This argument presupposes a sliding standard for transparency, under which the Department may expect "sophisticated" parties to intuit the information it desires, while "inexperienced" parties are entitled to detailed requests. Unsurprisingly, Nucor's argument is not supported by a citation to the statute, the regulations, determinations by the Department, nor rulings by this Court. In any case, Nucor's argument is clearly refuted by this Court's reasoning in *Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*, as discussed above.

**C. Defendant and Defendant-Intervenors Fail to Demonstrate that the Department's Determination was Based on Substantial Evidence**

Defendant's and Nucor's defense of the Department's conclusory rejection of Prolamsa's LOT claim ignores the Department's obligation to provide sufficient reasoning for its conclusions. Moreover, Nucor and Atlas Tube impermissibly offer post hoc rationalizations in an effort to resuscitate the Department's conclusion related to quantitative information on the record as it relates to LOT.

**1. Defendant's and Defendant-Intervenors' defense of the Department's analysis misinterprets the substantial evidence standard**

The Department failed to explain why the quantitative evidence comparing selling expenses and other factors between Prolamsa's Commercial and Industrial sales was insufficient for purposes of its LOT claim. Indeed, the Department failed to mention that evidence at all. *See Final Decision Memo* at 27. Defendant claims that the Department's supposed consideration of the "totality of the record" met the substantial evidence standard of review. Def. Resp. Br. at 12. For its part, Nucor argues that the Department's determination was supported by substantial

evidence because the discussion of LOT covered several pages of the *Final Results*. Nucor Resp. Br. at 11.

In reality, the Department did not even mention that Prolamsa had submitted quantitative information as part of its *Supplemental Section A Response*, let alone weigh that evidence in conjunction with the qualitative evidence that was on the record. *See Supplemental Section A Response* at 8, 17 and Exhibits Supp. A-4 and Supp. A-8. Mere lip service to the Department's obligation to consider the totality of the evidence or take a holistic approach does not cure the Department's failure to consider or discuss record evidence. *See Final Decision Memo* at 25, 28; *Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141, 1165 (Ct. Int'l Trade 2000) ("Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders Commerce's determination unsupported by substantial evidence.").

In addition, while Nucor urges that Commerce should be presumed to have "considered all of the record evidence," Nucor Resp. Br. at 11, this presumption applies only "absent a showing to the contrary." *Jacobi Carbons AB v. United States*, 422 F. Supp. 3d 1318, 1325 n.10 (Ct. Int'l Trade 2019). Here, Prolamsa has made a clear showing to the contrary. The record clearly contains quantitative evidence. *See, e.g.*, *Supplemental Section A Response* at 8, 17 and Exhibits Supp. A-4 and Supp. A-8. Yet, the Department did not mention Prolamsa's quantitative evidence, nor cite to the portion of Prolamsa's *Supplemental Section A Response* in which it was included. *See Final Decision Memo* at 27. Further, the Department incorrectly states that quantitative evidence was not provided. Thus, the record shows that the Department was unaware of and/or did not consider the quantitative evidence on the record, negating a presumption that the Department considered the totality of the evidence.

Atlas Tube cites *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349 (Ct. Int'l Trade 2018) and *Pasta Zara SpA v. United States*, 781 F. Supp. 2d 1297 (Ct. Int'l Trade 2011) for the proposition that the Department retains "wide discretion" to deny LOT claims. Atlas/Searing Resp. Br. at 9-10. However, this discretion does not extend to simply overlooking evidence and/or failing to provide a reasoned explanation.

**2. Defendant Intervenors' post hoc rationalizations of the Department's determination are improper**

Defendant-Intervenors impermissibly read-in additional analysis that is not present in the *Final Results.* For instance, Nucor discusses several reasons why it believes the quantitative information submitted by Prolamsa was "wholly insufficient." Nucor Resp. Br. at 16, 18; *see also* Atlas/Searing Resp. Br. at 9 (alleging that Prolamsa's quantitative evidence does not demonstrate differences in "price comparability"). Yet, this reasoning is not present in the Department's actual analysis. The Court "may not accept appellate counsel's post hoc rationalizations for agency action . . . ." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). And, based on the lack of reasoning in the *Final Results*, the Court is not required to defer to the Department. *See Chr. Bjelland Seafood A/S v. United States*, 19 C.I.T. 35, 37 (Ct. Int'l Trade 1995) (citing *USX Corp. v. United States*, 655 F. Supp. 487, 492 (Ct. Int'l Trade 1987) ("Neither should the court defer to an agency's determination that is based on inadequate analysis.")).

Nucor's and Atlas Tube's attempts to discredit Prolamsa's quantitative analysis should also be rejected because they fail to consider the quantitative analysis in tandem with other record information that helps to connect the quantitative analysis to Prolamsa's LOT claim, such as the accompanying narrative descriptions of the quantitative information or the supporting

qualitative documentation.[4] *See* Nucor Br. at 16, 18; Atlas/Searing Resp. Br. at 9. Prolamsa's quantitative analysis illustrated the significantly higher overhead and selling expenses (in relation to revenue earned) for its Industrial versus Commercial sales groups, which related to Prolamsa's sales teams, and were therefore directly related to the selling activities that those teams performed in the ordinary course of business. *See Supplemental Section A Response* at 8 and Exhibit Supp. A-4.

### D. Defendant-Intervenor's Post Hoc Critique of Prolamsa's Qualitative Evidence is Meritless

In the *Final Results*, the Department rejected the LOTs reported by Prolamsa on the ground that they were not supported by quantitative evidence. *Final Decision Memo* at 27. The Department did not analyze whether the ***qualitative*** evidence submitted by Prolamsa was otherwise sufficient to support the reported LOTs. Instead, the Department simply concluded that "the totality of record evidence contains inadequate support for Prolamsa's LOT claims." *Final Decision Memo* at 28. Despite the lack of an analysis by the Department, Nucor now offers its own post hoc critique of why Prolamsa's qualitative evidence was inadequate. *See* Nucor Resp. Br. at 19-24. As noted above, the Court may not accept after-the-fact analysis from appellate counsel in place of the Department's own reasoning. *See Burlington Truck Lines*, 371 U.S. at 168. In any case, Nucor's arguments fail for several reasons.

First, Nucor's explanation of HM Channel 4, through which Prolamsa sold customized products, as opposed to standard HWRT sold through HM Channels 1-3, is contradicted by the

---

[4] Nucor also notes that to the extent "Prolamsa thought the worksheet was relevant to Commerce's analysis, Prolamsa should have filed a case brief or raised the issue in its rebuttal brief." Nucor Resp. Br. at 11, n.1. This claim ignores the fact that the Department mentioned its new standard of requiring quantitative evidence for the first time in the *Final Results*, after case and rebuttal briefs were filed. When Prolamsa became aware of the Department's application of this standard in reviewing its LOT claim, it was long past the deadline to submit written argument.

record because it ignores the detailed descriptions of services offered for products sold through HM Channel 4. *See Supplemental Section A Response* at 7-22 and Exhibit Supp. A-7. It is of no relevance that Prolamsa may have sold both standard HWRT and customized products to the same type of customer (*i.e.*, OEMs). *See* Nucor Resp. Br. at 19-20. The key difference is that when Prolamsa sold customized HWRT products in the home market, such sales were accompanied by additional services and activities performed at higher levels of intensity. *See* Prolamsa Br. at 5-8. Likewise, Prolamsa's US sales are not relevant to the additional services provided to customers who purchased customized HWRT products in Mexico. *See* Nucor Resp. Br. at 20.[5]

Second, Nucor claims that "custom products are subject to further manufacturing, which may add more in manufacturing costs, and therefore might command a price premium." Nucor Resp. Br. at 20. Nucor simply ignores the evidence that the difference in sales prices is also driven by differences in the nature and intensity of selling functions, which warrants finding separate LOTs. *See* Nucor Resp. Br. at 21. As Prolamsa explained in its rebuttal brief before the Department:

> The fact that industrial products are made to customer-specific requirements is a key fact – ***not because the physical characteristics of HWRT and production processes are, in-and-of themselves, determinative of a separate LOT, but because they drive numerous and substantial differences in selling functions that are determinative of a separate LOT***. The Department recognized the importance of Production Part Approval Process ("PPAP") for these sales: "Critical to these sales is the successful completion of the {PPAP}, an industry-specific qualification process that ensures quality and established processes for OEM customers . . . ." Further, the Department noted that PPAPs are representative of services provided in other selling activity categories, such as engineering services and technical assistance. PPAPs necessarily inform the

[5] Nucor did not provide the comparison of Prolamsa's home-market and US sales that it submitted in Exhibits 1 and 2 of its brief during the proceedings before the Department; therefore, it is not properly part of the record before this Court on appeal and should be disregarded.

> intensity of selling activities required, and Prolamsa provided documentation ***in addition to contemporaneous PPAPs***, which are illustrative of how its selling activities are informed by this service.

*Rebuttal Brief* at 7-8 (citations omitted) (emphasis added).

Finally, Nucor reiterates arguments raised in its case brief before the Department related to the type of supporting LOT documentation that Prolamsa provided. *See* Nucor Resp. Br. at 22-24; *see also* Def. Resp. Br. at 14 (referencing arguments made in Nucor's case brief, but failing to point to the Department's incorporation of these arguments in its LOT analysis). However, the Department did not adopt any of these arguments in the *Final Results*. In its case brief before the Department, and response brief before this Court, Nucor claims that Prolamsa "failed to provide any documentation for several selling activities," (*i.e.*, market research, personnel training, order input processing, freight and delivery, just-in-time delivery, and after sales services). Nucor Resp. Br. at 22; *see also Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Case Brief and Request to Participate in Hearing if Held, Dec. 18, 2019* at 9-10 (CR 304; PR 158) ("*Petitioners' Case Brief*"). However, Prolamsa provided a table summarizing the documentation on record supporting these activities. *See Rebuttal Brief* at 4-6.

Nucor further questions whether the supporting documentation for Prolamsa's marketing and sales promotional activities were sufficient to warrant finding separate LOTs. *See* Nucor Resp. Br. at 22-24; *Petitioners' Case Brief* at 10-13. Prolamsa responded to these identical arguments in the rebuttal brief submitted to the Department, explaining why its marketing and sales promotional activities for Industrial customers appropriately targeted such customers, and expanded upon the additional efforts made to market and promote Industrial products to Industrial customers. *See Rebuttal Brief* at 6-7.

Ultimately, because these arguments did not form the basis for the Department's denial of Prolamsa's LOT claim, they do not merit consideration on appeal.

## III. CONCLUSION AND RELIEF SOUGHT

For the reasons discussed is Prolamsa's Brief and above, Plaintiff respectfully requests that the Court:

1) Enter judgment in favor of Plaintiff;

2) Hold and declare that the 7.47 percent dumping margin assigned by the Department to Prolamsa in the *Final Results* is unsupported by substantial evidence and otherwise not in accordance with law;

3) Remand this matter to the Department to issue revised final results in conformity with the Court's decision; and

4) Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

WHITE AND CASE LLP

/s/ David E. Bond

David E. Bond
Allison J.G. Kepkay

WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to Plaintiff Productos Laminados de Monterrey S.A. de C.V.

Date: June 11, 2021

CERTIFICATE OF COMPLIANCE

I, David E. Bond, certify that the attached brief complies with the word limitation requirement, as stated in the Standard Chambers Procedures. The word count for Prolamsa's Reply Brief, as computed by the White & Case word processing system (Microsoft Word 2016) and manual tally, is 4,267 (exclusive of the table of contents, table of authorities, and counsel's signature block).

/s/ David E. Bond
David E. Bond