NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

PRODUCTOS LAMINADOS DE MONTERREY
S.A. DE C.V.,

      Plaintiff,

   v.

UNITED STATES,

      Defendant,

   and

NUCOR TUBULAR PRODUCTS INC. and
ATLAS TUBE AND SEARING INDUSTRIES,

      Defendant-Intervenors.

Before:  Hon. Timothy C. Stanceu,
    Senior Judge

Court No. 20-00166

**NON-CONFIDENTIAL VERSION**

Business Proprietary Information
Removed from Pages 9, 10, 12-14,
and 16

## DEFENDANT-INTERVENOR NUCOR TUBULAR PRODUCTS INC.'S COMMENTS ON REMAND REDETERMINATION

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Jake R. Frischknecht, Esq.
Paul A. Devamithran, Esq.

WILEY REIN LLP
2050 M Street NW
Washington, DC 20006
(202) 719-7000

*Counsel to Nucor Tubular Products Inc.*

Dated: May 9, 2022

Ct. No. 20-00166                                    NON-CONFIDENTIAL VERSION

## **<u>TABLE OF CONTENTS</u>**

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF ARGUMENT ............................................................................. 2

III.   BACKGROUND .................................................................................................. 2

       A.    Commerce's Level of Trade Analysis ...................................................... 2

       B.    Relevant Procedural History ....................................................................6

IV.    STANDARD OF REVIEW ................................................................................ 10

V.     ARGUMENT ...................................................................................................... 12

       A.    Commerce's Remand Redetermination Was Not Supported by
             Substantial Evidence Because the Information on the Record is
             Insufficient to Justify a LOT adjustment. ..............................................12

       B.    Commerce's Remand Redetermination Was Not Supported by
             Substantial Evidence Because It Did Not Fully Engage with
             Detracting Information..............................................................................15

       C.    Commerce's Remand Redetermination Was Not Supported by
             Substantial Evidence Because It Relies on Inferences That Are
             Vague and Conclusory..............................................................................17

VI.    CONCLUSION................................................................................................... 19

Ct. No. 20-00166                                          NON-CONFIDENTIAL VERSION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allegheny Ludlum Corp. v. United States,*
  24 CIT 452, 479, 112 F. Supp. 2d 1141, 1165 (2000) .....................................................11, 16

*Biestek v. Berryhill,*
  139 S. Ct. 1148 (2019) .....................................................................................................10

*Consol. Edison Co. of N.Y. v. Nat'l Lab. Rels. Bd.,*
  305 U.S. 197 (1938) .........................................................................................................11

*Huaiyin Foreign Trade Corp. (30) v. United States,*
  322 F.3d 1369, 1374 (Fed. Cir. 2003) .............................................................................11, 16

*Husteel Co. v. United States,*
  31 CIT 740, 748, 491 F. Supp. 2d 1283, 1291 (2007) .......................................................11

*Productos Laminados de Monterrey S.A. de C.V. v. United States,*
  554 F. Supp. 3d. 1355, 1362 (Ct. Int'l Trade 2021) ...................................................... *passim*

*Shijiazhuang Goodman Trading Co. v. United States,*
  172 F. Supp. 3d 1363, 1378 (Ct. Int'l Trade 2016) .......................................................11, 18

*Siemens Energy, Inc. v. United States,*
  806 F.3d 1367 (Fed. Cir. 2015) .......................................................................................10

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................................................10, 15

19 U.S.C. § 1677b(a) .........................................................................................................2

19 U.S.C. § 1677b(a)(1)(B)(i)............................................................................................3

19 U.S.C. § 1677b(a)(7)......................................................................................................3

**Regulations**

19 C.F.R. § 351.412(c)(2)....................................................................................................3

19 C.F.R. § 351.401(b)(1)....................................................................................................6, 16

Ct. No. 20-00166                                          NON-CONFIDENTIAL VERSION

**Administrative Materials**

*Certain Cold Rolled Steel Flat Products from the Republic of Korea,*
   84 Fed. Reg. 63,607 (Dep't Commerce Nov. 18, 2019) ..................................................6

*Certain Cold-Rolled Steel Flat Products from the United Kingdom,*
   84 Fed. Reg. 34,868 (Dep't Commerce July 19, 2019) ..................................................4

*Certain Cold-Rolled Steel Flat Products from the United Kingdom,*
   84 Fed. Reg. 59,771 (Dep't Commerce Nov. 6, 2019) ....................................................4

*Magnesium from Israel,*
   84 Fed. Reg. 32,712 (Dep't Commerce July 9, 2019) ......................................................4

*Magnesium from Israel,*
   84 Fed. Reg. 65,781 (Dep't Commerce Nov. 29, 2019) ..................................................4

*Passenger Vehicle and Light Truck Tires from Taiwan,*
   86 Fed. Reg. 508 (Dep't Commerce Jan. 6, 2021) ..........................................................6

*Polyethylene Terephthalate Sheet from the Republic of Korea,*
   85 Fed. Reg. 12,500 (Dep't Commerce Mar. 3, 2020) ....................................................3

*Polyethylene Terephthalate Sheet from the Republic of Korea,*
   85 Fed. Reg. 44,276 (Dep't Commerce July 22, 2020) ..................................................4

*Ripe Olives from Spain,*
   85 Fed. Reg. 84,297 (Dep't Commerce Dec. 28, 2020) ..................................................6

Ct. No. 20-00166                                    NON-CONFIDENTIAL VERSION

## I.    **INTRODUCTION**

On behalf of Defendant-Intervenor Nucor Tubular Products Inc. ("Nucor Tubular" or "Petitioner"), we respectfully submit the following comments on the final results of redetermination pursuant to remand issued by the U.S. Department of Commerce ("Commerce") regarding the second administrative review of the antidumping duty order of heavy walled rectangular carbon welded steel pipes and tubes ("HWR") from Mexico (Case No. A-201-847). Final Results of Redetermination Pursuant to Ct. Remand (Apr. 7, 2022), ECF No. 61 ("Remand Redetermination"). In the remand redetermination, Commerce reversed its prior evaluation of the evidence on the record and found that Productos Laminados de Monterrey S.A. de C.V. ("Prolamsa") made its home market ("HM") sales at two levels of trade ("LOTs"). *See id.* at 2. As a result, Commerce awarded a LOT adjustment to Prolamsa and reduced Prolamsa's weighted-average dumping margin from 7.47% to 0.89%. *Id.*

When the Court reviewed Commerce's original determination, the Court faulted Commerce for relying on vague and conclusory inferences without addressing all of the available record evidence. As explained further below, Commerce overcorrected to the Court's remand order and committed the same error it made in its final determination. *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico*, 85 Fed. Reg. 41,962 (Dep't Commerce July 13, 2020) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2017-2018), P.R. 181.[1] Specifically, Commerce has not fully engaged with the evidence on the record

---

[1]    Documents on the public and confidential records of the underlying administrative review are identified by "P.R." and "C.R." respectively, followed by the number assigned to the relevant document in the administrative record index filed with the Court on November 9, 2020. Documents on the public and confidential record of the remand proceeding are identified by "P.R.R." and "C.R.R." respectively, followed by the number assigned to the relevant document in the administrative record index filed with the Court on April 21, 2022.

or its deficiencies and instead has relied on vague and conclusory inferences when deciding that a LOT adjustment is now warranted.

As illustrated by the sharp margin decrease in Commerce's remand redetermination and as described in more detail below, a LOT adjustment can significantly affect the margin in an antidumping case and is used only when specific conditions are met. Commerce's use of the LOT adjustment in the calculation of Prolamsa's normal value is the sole issue before the Court.

## II.   SUMMARY OF ARGUMENT

Petitioner respectfully submits that Commerce's remand redetermination, whereby the agency found two LOTs for Prolamsa's HM sales is not supported by substantial evidence for three reasons. First, the information on the record is insufficient to justify a LOT adjustment. Second, the remand redetermination ignores information that fairly detracts from its conclusion. And third, Commerce's finding of two LOTs relies on inferences that are vague and conclusory. Commerce's remand redetermination is an overcorrection to the Court's remand order and Petitioner requests that the Court reject the redetermination results and remand to Commerce with instructions to substantively reconsider record evidence.

## III.   BACKGROUND

### A.   Commerce's Level of Trade Analysis

Dumping occurs when a product is sold in the United States for less than "normal value." In this review, normal value was determined by using Prolamsa's sales prices of HWR to customers in Mexico. When comparing normal value to the sales value in the United States, Commerce's guiding principle is to make "a fair comparison." 19 U.S.C. § 1677b(a). As part of this fair comparison, Commerce, "to the extent practicable," is instructed to ensure that both the sales in the Mexican market and sales in the U.S. market are made at "the same level of trade"

*Id.* § 1677b(a)(1)(B)(i). An adjustment is made if three conditions are satisfied: there are two LOTs in the Mexican market; a sale in the U.S. market matches a sale in the Mexican market; and the matching sales are at different LOTs. *Id.* § 1677b(a)(7).

When making a LOT determination, Commerce evaluates the seller's entire marketing process and conducts a "holistic" analysis. Issues and Decision Memorandum accompanying *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico*, 85 Fed. Reg. 41,962 (Dep't Commerce July 13, 2020) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2017-2018) at 25, P.R. 173 ("I&D Memo"); *see also* Antidumping Duty Administrative Review Request for Information, *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes*, Sections A-D (Feb. 8, 2019) at I-11, P.R. 23 ("Initial Questionnaire"). "{S}ales are made at different levels of trade if they are made at different marketing stages (or their equivalent)." 19 C.F.R. § 351.412(c)(2). As part of this holistic analysis regarding sales at "different stages in the marketing process . . . ," Commerce examines the "distribution system in each market *i.e.*, the chain of distribution, including selling functions and class of customer (customer category), and the level of selling expenses for each type of sale." Preliminary Decision Memorandum accompanying *Polyethylene Terephthalate Sheet from the Republic of Korea*, 85 Fed. Reg. 12,500 (Dep't Commerce Mar. 3, 2020) (prelim. affirm. deter. of sales at less than fair value, postponement of final deter., and extension of provisional measures) at 14-15. "Different levels of trade are typically characterized by purchasers at different stages in the chain of distribution and sellers performing qualitatively and/or quantitatively different selling activities." Initial Questionnaire at I-11.

However, even substantial differences in selling activities are not by themselves sufficient to earn a LOT adjustment. 19 C.F.R. § 351.412(c)(2) ("Substantial differences in selling activities

are a necessary, but not sufficient, condition for determining that there is a difference in the stage of marketing."); *see also* Initial Questionnaire at I-11 ("{D}ifferences in selling activities alone are not sufficient to establish differences in levels of trade."). As part of Commerce's holistic analysis, Commerce examines "customer categories such as distributor, wholesaler, retailer, and end-user." Initial Questionnaire at I-11.

In 2018, Commerce established a practice of requiring LOT adjustments to be supported with verifiable, quantitative data. I&D Memo at 25; *see also* Issues and Decision Memorandum accompanying *Polyethylene Terephthalate Sheet from the Republic of Korea*, 85 Fed. Reg. 44,276 (Dep't Commerce July 22, 2020) (final deter. of sales at less than fair value) at 19 ("Commerce's requirement that respondents support LOT claims with quantitative evidence in all proceedings was implemented in 2018 to enhance Commerce's ability to determine whether reported differences in selling functions are substantial enough to warrant a finding that sales were made at different LOTs."); Preliminary Decision Memorandum accompanying *Magnesium from Israel*, 84 Fed. Reg. 32,712 (Dep't Commerce July 9, 2019) (prelim. affirm. deter. of sales at less than fair value, postponement of final deter., and extension of provisional measures) at 13 (rejecting LOT claim where respondent failed to supply adequate "quantitative analysis"), *unchanged in Magnesium from Israel*, 84 Fed. Reg. 65,781 (Dep't Commerce Nov. 29, 2019) (final affirm. deter. of sales at less than fair value); Preliminary Decision Memorandum accompanying *Certain Cold-Rolled Steel Flat Products from the United Kingdom*, 84 Fed. Reg. 34,868 (Dep't Commerce July 19, 2019) (prelim. results of antidumping duty admin. rev.; 2017-2018) at 10, *unchanged in Certain Cold-Rolled Steel Flat Products from the United Kingdom*, 84 Fed. Reg. 59,771 (Dep't Commerce Nov. 6, 2019) (final results of antidumping duty admin. rev.; 2017-2018) (same).

Commerce revised its practice because it found, in light of ample relevant experience, that the alternative gave rise to the potential for manipulation and inaccurate reporting.[2] I&D Memo at 25. In the past, respondents submitted declarations, emails, and other non-verifiable evidence in support of LOT adjustment claims. In addition to being unreliable, Commerce determined that such evidence was also necessarily subject to differing interpretations, which undermined the consistency of the agency's LOT determinations. *Id.* at 25-26. As a result, Commerce requires

---

[2]      Commerce's full explanation for the quantitative analysis request explains the crucial role that a quantitative analysis plays in Commerce's LOT determination:

> Significantly, Commerce's requirement that respondents support LOT claims with quantitative evidence in all proceedings was implemented in 2018 to enhance Commerce's ability to determine whether reported differences in selling functions are substantial enough to warrant a finding that sales were made at different LOTs. Although qualitative information is helpful and relevant to the LOT analysis, reliance on this information alone limits Commerce's ability to analyze selling functions to determine if LOTs identified by a party are meaningful and to evaluate whether a respondent's LOT claims are reasonable and accurate. Indeed, reliance on qualitative evidence, such as narrative descriptions of differences in selling functions, customer correspondence, sample sales records, meeting presentations and the like, without supporting quantitative evidence frequently does not present a complete understanding of a respondent's selling activities. Additionally, reliance on purely qualitative information may create the potential for manipulation (or inaccurate reporting) by permitting respondents to create a narrative that is not linked in any way to its verifiable financial data. Requiring quantitative evidence enhances our LOT analysis because such information allows us to determine whether differences in prices among various customer categories or differences in levels of expenses in different claimed LOTs are, in fact, attributable to differences in LOTs or to some other unrelated factor such as relative sales volumes. Quantitative information permits Commerce to examine whether respondent's narrative explanations and qualitative evidence are supported by its books and records maintained in the ordinary course of business. Additionally, the requirement that respondents provide quantitative support for their claimed LOTs reduces subjectivity and the likelihood of inconsistency in the application of Commerce's analytical framework that results from the analysis of purely qualitative information, which can be, by its nature, subject to different interpretations.

I&D Memo at 25-26 (internal citations omitted).

"verifiable financial data" – *e.g.*, contemporaneous financial records – to substantiate any qualitative evidence submitted in support of a LOT adjustment claim. *Id.* at 25; *see also* Preliminary Decision Memorandum accompanying *Passenger Vehicle and Light Truck Tires from Taiwan*, 86 Fed. Reg. 508 (Dep't Commerce Jan. 6, 2021) (prelim. affirm. deter. of sales at less than fair value, postponement of final deter., and extension of provisional measures) at 12 (rejecting LOT adjustment because respondent failed to provide a "quantitative analysis, to be substantiated with source documents"); Preliminary Decision Memorandum accompanying *Ripe Olives from Spain*, 85 Fed. Reg. 84,297 (Dep't Commerce Dec. 28, 2020) (prelim. results of antidumping duty admin. rev.; 2018-2019) at 15 ("{G}iven the importance of the quantitative analysis to Commerce's LOT analysis, we find that none of the respondents have met their evidentiary burden."); Preliminary Decision Memorandum accompanying *Certain Cold Rolled Steel Flat Products from the Republic of Korea*, 84 Fed. Reg. 63,607 (Dep't Commerce Nov. 18, 2019) (prelim. results of antidumping duty admin. rev.; 2017-2018) at 20-21 ("Because Hyundai did not provide the data or documents to support its quantitative analysis of the selling functions it performed, we have not relied on this data in the preliminary results. . . . and have made no LOT adjustment for these preliminary results").

## B.    <u>Relevant Procedural History</u>

In this review, Prolamsa made several claims regarding a LOT adjustment but failed to adequately support those claims with contemporaneous quantitative documentation. One of the questions in the initial questionnaire asked whether prices of subject merchandise varied between channels of distribution, and if so, to "explain how prices vary and why." Initial Questionnaire at A-8. It is the responsibility of the respondent to divide its distribution operations into channels and explain the differences to Commerce. *See* 19 C.F.R. § 351.401(b)(1).

Prolamsa's initial submission contained no supporting contemporaneous documentation to support its narrative responses regarding Prolamsa's distribution. Letter from White & Case LLP to Sec'y Commerce, re: *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Response to Section A of the Questionnaire* (Mar. 15, 2019) at A-19 – A-22, Exhibit A-11, C.R. 22-37, P.R. 46-56 ("Section A QR").

Recognizing that Prolamsa had provided subjective, unsubstantiated evidence, Commerce issued a supplemental questionnaire to seek supporting documentation regarding the claims made in Exhibit A-11.  Letter from Shawn Thompson, Program Manager, Off. II, AD/CVD Operations, to White & Case LLP, re: *Administrative Review of Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico* (Oct. 9, 2019) at 3-6, C.R. 194, P.R. 114.  Commerce posed over twenty questions asking for supporting documentation for the activities performed, a list of specific activities that Prolamsa performed under each category of selling activity, the frequency at which the activities were performed, and an explanation between different categories that seemed similar. *Id.*  Prolamsa's response did not answer those questions and did not provide adequate contemporaneous documentation.

Instead, Prolamsa again responded with significant narrative responses. Letter from White & Case LLP to Sec'y of Commerce, re: *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Response to the First Section A Supplemental Questionnaire* (Oct. 21, 2019) at 7-22, C.R. 255-260, P.R. 135-137 ("Supp. AQR"). Prolamsa also provided a worksheet that compared the selling expenses of the Commercial group as a whole to the Industrial group, and also compared those expenses to the revenue generated by each group. *Id.* at Exhibit 1st Supp. A-4. However, this chart did not address the differences in manufacturing costs between custom and standard products, as mentioned in the initial section A response. *See* Section A QR at A-22.

Moreover, the provided worksheet did not tie these selling expenses in any meaningful way to Prolamsa's financial records, or the price differences between products sold in HM Channel 4 and the other HM channels.

Applying the agency's revised standard concerning verifiable, quantitative data, Commerce determined that "the totality of the record evidence contains inadequate support for Prolamsa's LOT claims." I&D Memo at 27-28.

Prolamsa challenged Commerce's final determination that its HM sales were made at one LOT. In support, Prolamsa argued that some evidence on the record, including the selling expenses data indicating different prices for different channels, did support its claim that Channel 4 was a distinct LOT. Petitioner, in turn, argued that by Prolamsa's own admission those differences in prices were attributable to different production costs for a premium product not different stages of marketing or substantially different selling activities as required by statute.

The Court found that Commerce's final determination contained two key findings that were unsupported by substantial evidence and remanded to Commerce for reconsideration. First, the Court held that Commerce's finding of no quantitative evidence on the record was factually incorrect because certain selling expenses and inventory expenses were included in one of Prolamsa's supplemental questionnaire responses. *Productos Laminados de Monterrey S.A. de C.V. v. United States*, 554 F. Supp. 3d. 1355, 1362 (Ct. Int'l Trade 2021). Second, the Court opined that Commerce's final determination seemed to depart from its preliminary analysis wherein it had originally found two LOTs using vague and conclusory language. *Id*.

Specifically, when deciding that Commerce's finding of no quantitative evidence was incorrect, the Court pointed to two sets of data Prolamsa provided. First, the Court highlighted the quantitative data Prolamsa provided "illustrating differences between the staffing and expenses it

incurred in making its home market 'industrial' sales . . . in HM Channel 4, and its sales of standard HWR pipe and tube in the other three channels, to which it referred in the response as its 'commercial' sales'." *Id.* The Court noted that the data generally showed that staffing expenses and total selling expenses were higher in the HM Channel 4 industrial sales than they were in the HM Channels 1-3 commercial sales. Second, the Court highlighted quantitative data that Prolamsa provided regarding inventory turnover. *Id.* at 1363. Generally, the data demonstrated that sales through HM Channel 4 had slower inventory turnover compared to HM Channels 1-3.

On April 7, 2022, Commerce issued its final results of redetermination, altering its original determination and finding two LOTs in Prolamsa's home market. Remand Redetermination at 21. Commerce's remand redetermination awarded a LOT adjustment. *Id.* When making this reversal in its remand redetermination from its final determination, Commerce generally discussed both sets of data highlighted by the Court. However, as Petitioner noted in comments on Commerce's draft remand results, Commerce failed to connect any differences in the sales expenses – demonstrated by the data the Court highlighted – to a difference in sales prices. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Comments on Draft Results of Redetermination* (Mar. 17, 2022) at 4, C.R.R. 10-11, P.R.R. 6. In fact, as discussed further below, the quantitative data illustrating [                    ] in selling expenses related to salaries, benefits, and inventory costs that does exist on the record cannot explain the [          ] differences in price. *See id.* at 4-5. The salaries and benefits as a ratio of total sales for both Channel 4 sales and Channels 1 through 3 were both [           ]. Supp. AQR at Exhibit 1st Supp. A-4. [                              ]

**Business Proprietary Information Has Been Deleted**

for both Industrial and Commercial sales [                                        ].[3]

Since these selling expenses are [                        ] for both channels, they cannot explain

a [      ] price premium for the Channel 4 sales.

       The Court remanded Commerce's final determination because it failed to acknowledge or

meaningfully engage with quantitative data on the record. In Commerce's remand redetermination,

Commerce acknowledged that data and relied on it to reverse its determination. But as discussed

in more detail below, Commerce once again failed to meaningfully engage with the quantitative

data on the record. Thus, Commerce has committed the same error on remand that it made in its

original determination. Petitioner requests this Court reject the remand determination as

unsupported by substantial evidence and remand back to Commerce.

## IV.    STANDARD OF REVIEW

       The Court must sustain an antidumping determination of Commerce <u>unless</u> it is

"unsupported by substantial evidence on the record, or otherwise not in accordance with law."

19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is such relevant evidence a reasonable mind

might accept as adequate to support a conclusion." *Siemens Energy, Inc. v. United States*, 806

F.3d 1367, 1369 (Fed. Cir. 2015) (citing *Universal Camera Corp. v. Nat'l Lab. Rels. Bd.*, 340 U.S.

474, 477 (1951) (quotations omitted)). The substantial evidence standard requires the Court to look

"to an existing administrative record and asks whether it contains 'sufficien{t} evidence' to

support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(citing *Consol. Edison Co. of N.Y. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938)). The record

must be considered as a whole, "including evidence that supports as well as evidence that 'fairly

---

[3]    Calculated by subtracting the column "Salaries & Benefits as a % of sales value" from "Selling Expenses as a % of total Sales".

detracts from the substantiality of the evidence.'" *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). "Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders Commerce's determination unsupported by substantial evidence." *Allegheny Ludlum Corp. v. United States*, 24 CIT 452, 479, 112 F. Supp. 2d 1141, 1165 (2000). "An agency's determination is not supported by substantial evidence where the agency fails to adequately explain the basis on which the agency made its decision." *Husteel Co. v. United States*, 31 CIT 740, 748, 491 F. Supp. 2d. 1283, 1291 (2007). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co.*, 305 U.S. at 229.

Furthermore, the Court has warned the agency against drawing inferences that are vague and conclusory. According to the Court, "to be sustained upon judicial review, a determination must be based on findings supported by substantial record evidence. Moreover, there must be reasoning by which a court may ascertain the connection between the 'facts found and the choice made'." *Sh.jiazhuang Goodman Trading Co. v. United States*, 172 F. Supp. 3d 1363, 1378 (Ct. Int'l Trade 2016) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). The Court continued, "an inference is not a finding, and this particular inference is vague and conclusory. An agency may draw a reasonable inference so long as it is drawn from record evidence or a finding based on record evidence . . . ." *Id.*  In order to meet the substantial evidence standard, Commerce must link its ultimate decision to record evidence via explicit reasoning not vague and conclusory inferences.

## V.      ARGUMENT

### A.      Commerce's Remand Redetermination Was Not Supported by Substantial Evidence Because the Information on the Record is Insufficient to Justify a LOT adjustment.

Prolamsa failed to provide verifiable, quantitative evidence here in support of its LOT adjustment claim. Instead, Prolamsa provided self-serving declarations, photographs, and a made-for-litigation financial analysis – all without contemporaneous, supporting documentation. *See* Mem. of P. & A. in Supp. of Pl.'s Rule 56.2 Mot. for J. Upon the Agency R. at 9-10 (Mar. 5, 2021), ECF No. 31; *see also* I&D Memo at 16-18 (summarizing Nucor Tubular's arguments). The substance of the worksheet Prolamsa provided contained a table that showed a division of certain expenses, including salaries and benefits for personnel between the offices that handle custom and standard products. Supp. AQR at Exhibit 1st Supp. A-4. Yet Prolamsa did not provide supporting documentation for the numbers on the worksheet, nor did Prolamsa tie any of the provided numbers to its financial statements. Prolamsa also failed to demonstrate how the difference in sales expenses affected the price differences sufficiently to merit a LOT offset.

Specifically, Prolamsa has not connected the [          ] difference in selling expenses to the [          ] difference in sales prices. The percent difference between a weighted average of Channels 1-3 prices and Channel 4 prices was [          ]. *Id.* at Exhibit 1st Supp. A-8. Yet, the quantitative evidence Prolamsa provided was related to [          ] in selling expenses related to salaries, benefits, and inventory costs. *Productos Laminados*, 554 F. Supp. 3d at 1362. The salaries and benefits as a ratio of total sales for both Channel 4 sales and Channels 1 through 3 were both [          ]. Supp. AQR at Exhibit 1st Supp. A-4. [          ] for both Industrial and Commercial sales [

12

].[4] *Id*. Where the salaries and benefits for both channels are [

], the salaries and benefits cannot explain a [        ] price premium for the Channel 4 sales. [

] should not be considered sufficient evidence to support

a LOT adjustment and should not be deemed "substantial" under the regulations.

On remand, the Court pointed to the inventory costs incurred to support just-in-time

delivery to the OEM customers. *Productos Laminados*, 554 F. Supp. 3d at 1363. Yet, the evidence

Prolamsa offered regarding differences in inventory carrying costs are wholly inadequate.

First, the data provided in the exhibit cited by the Court is inconsistent with what was

reported in the databases. [

]. Letter from White & Case LLP to Sec'y Commerce, re: *Heavy Walled

Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Resubmission of Cost Databases*

(Oct. 25, 2019) at Exhibit 1, C.R. 280, P.R. 141 ("Prolamsa Database Resubmission"). Therefore,

the reported databases which are used to calculate the margins do not support the claims that

inventory costs differed between channels <u>and</u> contributed to price incompatibility. Thus, it would

be reasonable for the Court to discount the self-serving claims made by Prolamsa regarding

inventory expenses in Exhibit 1st Supp. A-8 in support of the LOT adjustment. Supp. AQR at

Exhibit 1st Supp. A-8.

Second, inventory carrying costs is an imputed, rather than an actual cost, in Commerce's

calculations. Companies typically do not track or assign costs for inventory days. Inventory costs

are rarely included in financial statements. Thus, it is both odd and implausible for inventory costs

to be cited as a significant service for which quantitative data demonstrates price comparability,

---

[4]      Calculated by subtracting the column "Salaries & Benefits as a % of sales value" from
"Selling Expenses as a % of total Sales".

especially a price difference [                                  ]. *Id.* Commerce acknowledged that they "do

not request inventory carrying cost information" but nonetheless found that this information was

"integral to {the} analysis" because it was consistent with Prolamsa's claim that it maintained an

appropriate level of inventory on hand in order to provide just-in-time delivery to HM Channel 4

customers. Remand Redetermination at 19. This demonstrates that Commerce's remand

determination is not supported by substantial evidence because Commerce claims to have relied

on these imputed costs in determining to grant an LOT offset, but utterly fails to explain how the

data with [                            ] price differences is actually "integral" to the analysis.

Even if the inventory costs could plausibly affect price comparability, the provided data

here do not support such an assertion. According to Prolamsa's submitted databases, the inventory

carrying cost was [

]. Prolamsa Database Resubmission at Exhibit 1.

Notwithstanding the differences between the databases and Exhibit 1ˢᵗ Supp. A-8, the

numbers in Exhibit 1ˢᵗ Supp A-8 could not plausibly lead to a [                    ] of costs

between channels. Thus, regardless of how Commerce considers the inventory costs, they are still

[                                                      ]. Prolamsa Database

Resubmission at Exhibit 1. While there may be differences in the cost of manufacturing to account

for the [      ] price difference, those costs of manufacturing would be accounted for in a difference

in merchandise ("DIFMER") adjustment not a LOT adjustment. Prolamsa, and now Commerce,

are confusing and conflating a LOT with a DIFMER adjustment. These are not the same thing and

should not be treated the same way.

Because Prolamsa failed to provide adequate quantitative data, the record does not contain

sufficient verifiable financial information to support a LOT adjustment per Commerce's own

guidelines. Therefore, Commerce's remand redetermination awarding a LOT adjustment is by definition not supported by substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i).

**B.    Commerce's Remand Redetermination Was Not Supported by Substantial Evidence Because It Did Not Fully Engage with Detracting Information.**

In addition to the lack of evidence on the record to support a LOT adjustment, record evidence demonstrates a LOT adjustment would be inappropriate because Commerce did not fully engage with detracting information when making its remand redetermination. When considering Commerce's original determination, the Court faulted Commerce for not properly considering contrary evidence used to support a LOT adjustment. Yet, Commerce made the same mistake in this remand by not considering and addressing the contrary evidence that shows there is not a significant difference in selling expenses that warrants an adjustment.

The price differences between Channel 4 and the other channels described above have a far more plausible explanation, and one that does not require a LOT offset. As Prolamsa conceded – and the Court explicitly acknowledges – the price differences between HM Channel 4 and HM Channel 1-3 are due to "additional production costs incurred to manufacture the {custom} parts." *Productos Laminados*, 554 F. Supp. 3d at 1360. A difference in the cost of production cannot qualify for a LOT offset under the statute. Prolamsa's HM price differences between channels are due to the fact that the more expensive product of HM Channel 4 is custom-made and commands a price premium. The price differences are not due to an advanced LOT or additional significant selling activities.

Commerce acknowledged that the higher prices of HM Channel 4 sales were due in part to premium production costs which are outside the gambit of LOT. Remand Redetermination at 21. However, Commerce then simply concluded that the same products require performance of advanced selling activities even though the only substantiated selling expenses accounting for

**Business Proprietary Information
Has Been Deleted**

[    ] of the increase. Without attempting to probe what portion of the [      ] increase in price was due to the additional costs of manufacturing premium products, Commerce concluded on the basis of "all of Prolamsa's provided quantitative and qualitative evidentiary support" that Prolamsa's HM Channel 4 selling activities were made a higher level of intensity and that was enough to justify a LOT adjustment. *Id.*

The burden for establishing a LOT offset and entering sufficient supporting evidence rests with Prolamsa, and Prolamsa did not meet its burden. According to Commerce's regulations, "{t}he interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment."19 C.F.R. § 351.401(b)(1). Because the price difference comes from differences in manufacturing, and the differences in selling expense are [      ], the LOT adjustment is not warranted. By conflating a LOT adjustment with what amounts to a DIFMER adjustment, Commerce undermines the statutory scheme and runs the risk of accounting for all future DIFMER adjustments as LOTs.

Commerce bears the responsibility of considering "evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Huaiyin Foreign Trade Corp. (30)*, 322 F.3d at 1374 (quoting *Atl. Sugar, Ltd.*, 744 F.2d at 1562). "Commerce's total failure to consider or discuss record evidence" – like attribution of the differences in price between Prolamsa's HM Channel 4 sales – "on its face, provides significant support for an alternative conclusion renders Commerce's determination unsupported by substantial evidence." *Allegheny Ludlum Corp.*, 24 CIT at 479, 112 F. Supp. 2d at 1165.

Ct. No. 20-00166                                        NON-CONFIDENTIAL VERSION

C.    **Commerce's Remand Redetermination Was Not Supported by Substantial Evidence Because It Relies on Inferences That Are Vague and Conclusory.**

Commerce's remand redetermination draws inferences that are vague and conclusory. For example, when considering whether the scant quantitative data provided concerning salaries and benefits could account for the premium for Channel 4 sales, Commerce stated, "we considered this evidence as part of our analysis of the record evidence as a whole and find that this evidence supports Prolamsa's claim that it performed significantly different selling activities at different intensities among its home market sales channels." Remand Redetermination at 17-18. Commerce also acknowledged that the cost database requested from Prolamsa did not contain information related to inventory carrying costs used to quantify the differences (if any) between the inventory levels associated with its sales channels. *Id.* at 19. Despite this, Commerce inferred a higher level of intensity for sales made through HM Channel 4 based on the "record evidence as a whole" including Prolamsa's claim that it maintained an appropriate level of inventory on hand to accommodate just-in time delivery to its HM Channel 4 customers. Finally, as described above, Commerce relied on a conclusory inference regarding the reason and relative weight of the differences in price for Prolamsa HM Channel 4 sales. "When taken *in toto*," Commerce determined that what quantitative evidence Prolamsa did provide was "sufficient to meet the requirements of 19 CFR 351.412(c)(2) to support a finding of different LOTs." *Id.*

Commerce's remand redetermination suffers from the same deficiency that precipitated the Court's remand of Commerce's final determination. In the final determination, Commerce did not engage with the quantitative data Prolamsa did provide or fully explain its reasons for departing from the Preliminary Results. *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*, 84 Fed. Reg. 63,610 (Dep't Commerce Nov. 18, 2019) (prelim. results of antidumping duty admin. rev. and prelim. deter. of no shipments; 2017-2018), P.R. 115. Instead,

Commerce found that the "totality of the record evidence contains inadequate support for Prolamsa's LOT claims." *Productos Laminados*, 554 F. Supp. 3d at 1363. The Court remanded for reconsideration. Here, Commerce has overcorrected and issued a remand redetermination that commits the same error. The remand redetermination fails to engage with the deficiencies in that data and does not explain its reasons for departing from its final determination. Instead, Commerce relies on similarly vague and conclusory language to conclude that a LOT adjustment should be given to Prolamsa.

As the Court found in *Sh.jiazhuang Goodman Trading Co.*, "an inference is not a finding." 172 F. Supp. 3d at 1378. The Court has found inferences to be "vague and conclusory" when their link to record evidence is attenuated. *Id.* Upon determining that Commerce's conclusions are supported by vague and conclusory inferences, the Court has found those conclusions to be unsupported by substantial evidence. The Court should make the same decision here because Commerce relies on vague and conclusory inferences to justify a LOT adjustment for Prolamsa. The Court should once again remand to Commerce for thorough engagement with the record evidence and its clear deficiencies.

## VI.   <u>CONCLUSION</u>

Prolamsa did not meet its burden to provide sufficient evidence in support of a LOT adjustment. Consequently, Commerce's remand redetermination providing a LOT adjustment was not supported by substantial evidence because the information on the record is insufficient to justify a LOT adjustment, Commerce did not fully engage with detracting information, and Commerce relied on inferences that were vague and conclusory. Therefore, for the reasons detailed above, Nucor Tubular respectfully requests that this Court remand the redetermination to Commerce for reconsideration and conformation with the record evidence.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Jake R. Frischknecht, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20006
(202) 719-7000

*Counsel to Nucor Tubular Products Inc.*

Dated: May 9, 2022

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor Nucor Tubular Products Inc.'s Comments on Remand Redetermination, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 5,527 words.

<u>*/s/ Alan. H. Price*</u>
(Signature of Attorney)

<u>Alan H. Price</u>
(Name of Attorney)

<u>Nucor Tubular Products Inc.</u>
(Representative Of)

<u>May 9, 2022</u>
(Date)