## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | | |
|---|---|---|
| PRODUCTOS LAMINADOS DE MONTERREY S.A. DE C.V.,<br>          Plaintiff,<br><br>v.<br><br>UNITED STATES,<br>          Defendant,<br><br>and<br><br>NUCOR TUBULAR PRODUCTS INC. and ATLAS TUBE AND SEARING INDUSTRIES,<br>          Defendant-Intervenors. | | Court No. 20-00166<br><br>**NON-CONFIDENTIAL VERSION**<br><br>**Business Proprietary Information has been deleted from Page 8.** |

### COMMENTS IN RESPONSE TO COMMENTS ON REMAND REDETERMINATION

David E. Bond
Allison J.G. Kepkay

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

May 24, 2022

AMERICAS 114361445

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    STANDARD OF REVIEW ....................................................................................1

III.   ARGUMENT ........................................................................................................2

      A.     The Department's *Remand Redetermination* Is Supported by Substantial
            Evidence...........................................................................................................3

            1.     Defendant-Intervenor's Standards for Quantitative Data Misrepresent
                 the Department's Requirements for Quantitative Data, or Lack
                 Thereof, in This Case....................................................................4

            2.     Defendant-Intervenor's Attempts to Discredit Prolamsa's Quantitative
                 Analysis Are Meritless..................................................................7

      B.     The Department's *Remand Redetermination* Appropriately Considered All
            LOT Evidence on the Record ..........................................................................11

      C.     The Department's *Remand Redetermination* Does Not Rely on Vague and
            Conclusory Inferences ...................................................................................12

IV.    CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allegheny Ludlum Corp. v. United States,*
  112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000) ..........................................................2

*Alloy Piping Prods. v. United States,*
  33 C.I.T. 349 (2009) ....................................................................................................9

*Burlington Truck Lines, Inc. v. United States,*
  371 U.S. 156 (1962).....................................................................................................1

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1996).....................................................................................................1

*Downhole Pipe & Equip., L.P. v. United States,*
  776 F.3d 1369 (Fed.Cir. 2015)...............................................................................1, 13

*Max Fortune Indus. LTD v. United States,*
  853 F. Supp. 2d 1258 (Ct. Int'l Trade 2012) ..........................................................12

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983)........................................................................................................2

*Nippon Steel Corp. et al. v. United States,*
  458 F.3d 1345 (Fed. Cir. 2006)................................................................................12

*NMB Sing. Ltd. v. United States,*
  557 F.3d 1316 (Fed. Cir. 2009).................................................................................2

*Productos Laminados de Monterrey S.A. de C.V. v. United States,*
  554 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) ...................................................1, 2, 13

*Shijiazhuang Goodman Trading Co. v. United States,*
  172 F. Supp. 3d 1363 (Ct. Int'l Trade 2016) .....................................................13, 14

*Stupp Corp. v. United States,*
  359 F. Supp. 3d 1293 (Ct.. Int'l Trade 2019) ..........................................................8

*Stupp Corp. v. United States,*
  5 F.4th 1341 (Fed. Cir. 2021) ...................................................................................8

*Trent Tube Div. v. Avesta Sandvik Tube AB,*
  975 F.2d 807 (Fed. Cir. 1992)..............................................................................2, 13

*Universal Camera Corp. v. NLRB,*
  340 U.S. 474 (1951)...................................................................................1

## STATUTES AND REGULATIONS

19 C.F.R. § 351.301(c)(5)..............................................................................8

19 U.S.C. § 1677m(d)....................................................................................7

## ADMINISTRATIVE DETERMINATIONS

*Certain Cold Rolled Steel Flat Products From the Republic of Korea:*
  *Preliminary Results of Antidumping Duty Administrative Review; 2017-2018,*
  84 Fed. Reg. 63607 (Nov. 18, 2019),
  and Accompanying Preliminary Decision Memorandum.........................5

*Certain Cold-Rolled Steel Flat Products From the United Kingdom: Preliminary*
  *Results of Antidumping Duty Administrative Review; 2017-2018,*
  84 Fed. Reg. 34868 (July 19, 2019),
  and Accompanying Preliminary Decision Memorandum.........................6

*Corrosion-Resistant Steel Products From the Republic of Korea: Final Results of*
  *Antidumping Duty Administrative Review and Final Determination of No*
  *Shipments; 2017-2018,*
  85 Fed. Reg. 15114 (Mar. 17, 2020),
  and Accompanying Issues & Decision Memorandum........................7, 9

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico:*
  *Final Results of Antidumping Duty Administrative Review; 2018–2019,*
  86 Fed. Reg. 41448 (Aug. 2, 2021),
  and Accompanying Issues & Decision Memorandum........................10

*Magnesium From Israel: Preliminary Affirmative Determination of Sales at Less*
  *Than Fair Value, Postponement of Final Determination, and Extension of*
  *Provisional Measures,*
  84 Fed. Reg. 32712 (July 9, 2019),
  and Accompanying Preliminary Decision Memorandum.........................6

*Passenger Vehicle and Light Truck Tires From Taiwan: Preliminary Affirmative*
  *Determination of Sales at Less Than Fair Value, Postponement of Final*
  *Determination, and Extension of Provisional Measures,*
  86 Fed. Reg. 508 (Jan. 6, 2021),
  and Accompanying Preliminary Decision Memorandum.........................5

*Ripe Olives From Spain: Preliminary Results of Antidumping Duty Administrative*
  *Review; 2018-2019,*
  85 Fed. Reg. 84297 (Dec. 28, 2020),
  and Accompanying Preliminary Decision Memorandum.........................5

## MISCELLANEOUS

MIRRIAM-WEBSTER.COM
    https://www.merriam-webster.com/dictionary .........................................................................4

## I.   INTRODUCTION

Plaintiff Productos Laminados de Monterrey S.A. de C.V. ("Prolamsa") responds to Defendant-Intervenor Nucor Tubular Products Inc.'s ("Nucor") comments filed in opposition to the Department of Commerce's ( "Department") Final Results of Redetermination Pursuant to Court Remand for *Productos Laminados de Monterrey S.A. de C.V. v. United States*, Court No. 20-00166, Slip Op. 21-170 (CIT December 17, 2021) (ECF No. 61) (Apr. 7, 2022) ("*Remand Redetermination*"), in which the Department accepted Prolamsa's level of trade ("LOT") claim.

We refer to underlying documents from the record using the abbreviated names set forth in the Memorandum of Points and Authorities in Support of Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record (ECF Nos. 31, 32) ("Prolamsa Br.") and the Reply Brief in Support of Plaintiff's Rule 56.2 Motion Judgment Upon the Agency Record (ECF No. 45) ("Prolamsa Reply Br.").[1]

## II.   STANDARD OF REVIEW

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). For a determination to be supported by substantial evidence, there must be a rational connection between the facts on the record and the choice made by the Department. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). The possibility of drawing inconsistent conclusions does not render the Department's findings unsupported by substantial evidence, *see Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996), and the court may not "reweigh the evidence or . . . reconsider questions of fact anew." *Downhole Pipe & Equip., L.P. v. United*

---

[1]  We assign the prefixes "PR" (for "public record") and "RPR" (for "remand public record") to public documents on the administrative record and assign the prefixes "CR" (for "confidential record") or "RCR" (for "remand confidential record") to confidential documents on the administrative record, followed by the reference number for the document.

*States*, 776 F.3d 1369, 1377 (Fed. Cir. 2015) (quoting *Trent Tube Div. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 815 (Fed. Cir. 1992)).

"In reviewing Commerce's factual determinations under the substantial evidence standard, the agency is 'presumed . . . to have considered all pertinent information sought to be brought to its attention'" and "there is no statutory requirement that the Department explicitly discuss every piece of record evidence that is put before it in an investigation." *Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141, 1165 (Ct. Int'l Trade 2000) (citations omitted). Thus, the Court will uphold the Department's determination as supported by substantial evidence, even if it is of "less than ideal clarity" where "the agency's path may reasonably be discerned." *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319-20 (Fed. Cir. 2009) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## III.   ARGUMENT

In remanding this case, this Court directed the Department to reconsider evidence on the record for two reasons: (1) to acknowledge and consider Prolamsa's quantitative evidence on the record; and (2) to review its "totality of the record evidence" analysis that was "vague and conclusory." *See Productos Laminados de Monterrey S.A. de C.V. v. United States*, 554 F. Supp. 3d 1355, 1362-65 (Ct. Int'l Trade 2021). As Prolamsa explained in its comments on the draft remand results before the Department, the *Remand Redetermination* meets these requirements. *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Comments on Draft Remand Results,* Mar. 17, 2022 (RPR 5). In opposing the *Remand Redetermination*, Nucor claims that the Department's analysis is deficient for three reasons: (1) the Department's analysis is not supported by substantial information; (2) the Department did not consider evidence that "detracted" from its conclusion, and (3) the Department relied on "vague and

conclusory" inferences.  *See* Defendant-Intervenor Nucor Tubular Inc.'s Comments on Remand Redetermination (ECF Nos. 64, 65) ("Nucor Comments").   Each of these arguments is unfounded and should be rejected.  The Department's *Remand Redetermination* is supported by substantial evidence and should be sustained by the Court.

> **A.**     **The Department's *Remand Redetermination* Is Supported by Substantial Evidence**

In the *Remand Redetermination*, the Department acknowledged that Prolamsa submitted quantitative evidence on the record of the administrative review, finding that Prolamsa "adequately provided certain quantitative metrics" to support its LOT claim.   *Remand Redetermination* at 11.  In particular, the Department found that the quantitative information provided for indirect selling expenses, salaries and benefits, and headcount support Prolamsa's LOT claim because these metrics demonstrated that the expenses incurred for industrial sales were higher than commercial sales.  *Id.*  The Department also found that Prolamsa's inventory turnover comparison supports its claim that Prolamsa needs to maintain additional inventory for sales through HM Channel 4 to manage its just-in-time delivery requirements.  *Id.* at 18-19.  In response, Nucor first claims that the quantitative evidence that Prolamsa provided was not verifiable or supported with source documentation, confusing the distinction between verifiable (which Prolamsa's information clearly was) and actually verified (which the Department chose not to do), and failing to acknowledge that the Department never asked Prolamsa for any additional supporting information.   Second, Nucor alleges that Prolamsa's quantitative information does not support its LOT claim, failing to apply to Department's totality of the evidence approach, which focuses on how the quantitative and qualitative evidence work in tandem to support Prolamsa's LOT claim.

1. **Defendant-Intervenor's Standards for Quantitative Data Misrepresent the Department's Requirements for Quantitative Data, or Lack Thereof, in This Case**

Nucor claims that Prolamsa failed to provide "verifiable" quantitative evidence to support its "LOT adjustment claim." Nucor Comments at 12. Summarily rejecting Prolamsa's evidence as "self-serving" and "made-for-litigation," Nucor claims that quantitative evidence requires supporting documentation and must be tied to financial statements. Nucor's claim that the quantitative evidence is not "verifiable" ignores the dictionary definition of the term – that is, "***capable*** of being verified." *Verifiable*, Mirriam-Webster.com, https://www.merriam-webster.com/dictionary/verifiable (emphasis added). There is nothing that suggests that the quantitative information Prolamsa provided was incapable of being verified. Had the Department requested that Prolamsa tie its quantitative analysis to its financial statements or provide some other type of reconciliation, it could and would have done so. But the record shows that the Department chose not to make such a request, which was well within its discretion.

Nucor also cites previous cases in support of the claim that Prolamsa's quantitative analysis must be supported by "verifiable financial data." *See* Nucor Comments at 6. However, all of these cases are distinguishable from this case. Nucor cites *Passenger Vehicle and Light Truck Tires from Taiwan* claiming that the Department rejected a respondent's LOT claim because it failed to provide a "quantitative analysis, to be substantiated with source documents." Nucor Comments at 6. This is incorrect. Instead, the Department explained that it rejected the LOT argument in *Passenger Vehicle and Light Truck Tires from Taiwan* "{b}ecause {the respondent} did not provide the requested quantitative analysis," ***not*** because it did not substantiate a quantitative analysis with source documents. *Passenger Vehicle and Light Truck Tires from Taiwan: Preliminary Affirmative Determination of Sales at Less Than Fair Value,*

*Postponement of Final Determination, and Extension of Provisional Measures*, 86 Fed. Reg. 508 (Jan. 6, 2021), and accompanying Preliminary Decision Memorandum at 12 (*unchanged in final*). Here, the Department did not request a quantitative analysis from Prolamsa to support its LOT claim (but Prolamsa nevertheless chose to provide such evidence).

Similarly, Nucor cites *Ripe Olives from Spain* and *Certain Cold Rolled Steel Flat Products from the Republic of Korea* as examples of respondents failing to support their LOT claims. However, in *Ripe Olives from Spain*, the respondents failed to provide the requested source documentation supporting selling activities performed (that is qualitative evidence) ***and*** a quantitative analysis. *See Ripe Olives From Spain: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019*, 85 Fed. Reg. 84297 (Dec. 28, 2020), and accompanying Preliminary Decision Memorandum at 15 (*unchanged in final*). Here, Prolamsa was not asked for a quantitative analysis, but provided both a quantitative analysis to support its LOT claim and source documentation to support the selling activities performed. *See Section A Response* at A-16 – A-19 and Exhibits A-9 – A-11; *Sections B and C Response* at B-19 – B-21 and Exhibit B-8 (Parts 1-5); *Supplemental Section A Response* at 7-18 and Exhibits Supp. A-4 – Supp. A-11. And, in *Certain Cold Rolled Steel Flat Products from the Republic of Korea*, the Department requested further information in a supplemental questionnaire to support the respondent's claim that its selling functions chart (classifying selling activity intensity on a scale from one to ten) consisted of a quantitative analysis. *See Certain Cold Rolled Steel Flat Products From the Republic of Korea: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018*, 84 Fed. Reg. 63607 (Nov. 18, 2019), and accompanying Preliminary Decision Memorandum at 20 (*unchanged in final*). Because the respondent did not provide the requested information, the Department did not accept the LOT claim. *Id.* In contrast, Prolamsa provided both a selling

functions chart and a separate quantitative analysis supporting its LOT claim. *See Supplemental Section A Response* at Exhibits Supp. A-4, Supp. A-7, and Supp. A-8. Moreover, the Department did not issue any supplemental questionnaires related to Prolamsa's quantitative analysis. Instead, Prolamsa fully responded to all requests for information.

Importantly, Nucor ignores the fact that the Department never requested a quantitative analysis from Prolamsa in the first place. Although Nucor claims that "Commerce established a practice of requiring LOT adjustments to be supported with verifiable, quantitative data{,}" the cases that it cites are again distinguishable from the case on appeal here. Nucor Comments at 4. For instance, in *Magnesium from Israel* and *Certain Cold-Rolled Steel Flat Products from the United Kingdom*, the Department made specific requests to provide a "quantitative analysis" related to the reported LOTs. *See Magnesium From Israel: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures¸* 84 Fed. Reg. 32712 (July 9, 2019), and accompanying Preliminary Decision Memorandum at 13 (*unchanged in final*); *Certain Cold-Rolled Steel Flat Products From the United Kingdom: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018*, 84 Fed. Reg. 34868 (July 19, 2019), and accompanying Preliminary Decision Memorandum at 10 (*unchanged in final*). The Department did not ask the same questions to Prolamsa, which is a key detail that Nucor simply omits.[2]

---

[2] Similarly, the Department in *Corrosion-Resistant Steel Products from the Republic of Korea* provided details on the "new" questions related to LOT that were asked in the questionnaire for that review, but were not asked in the previous review:

> Unlike the LOT questions in the prior review that had no sub-questions, ***the new LOT questionnaire*** requests that respondents provide . . . (4) a quantitative analysis showing how the expenses assigned to POR sales made at different claimed LOT impact price comparability functions; (5) a demonstration of how indirect selling expenses vary by the different LOT claimed; (6) an explanation of

Finally, there is no evidence even suggesting that the Department could not verify Prolamsa's quantitative data.  In any case, the Department opted not to do so.  Nor did it issue any supplemental questionnaire requesting further accounting information to support Prolamsa's quantitative analysis.  Thus, while Nucor is correct that Prolamsa had the burden of establishing different LOTs, *see* Nucor Comments at 16, 19, it overlooks the correlative legal requirement that the Department must clearly request the information needed to conduct its LOT analysis and to timely notify a respondent if the submitted information is deficient.  *See* 19 U.S.C. § 1677m(d); *see also* Prolamsa Reply Br. at 6-7.  Accordingly, Nucor's claims that Prolamsa's quantitative analysis is insufficient should be rejected because they are not supported by the record.

### 2. Defendant-Intervenor's Attempts to Discredit Prolamsa's Quantitative Analysis Are Meritless

Nucor focuses largely on price comparability in order to challenge the quantitative analysis that supports Prolamsa's LOT claim.  *See* Nucor Comments at 12-14.  Nucor's focus on price comparability is meritless and should be rejected.

First, Nucor claims that Prolamsa's analysis of selling expenses did not adequately connect the differences in selling expenses between HM Channels 1-3 and HM Channel 4 and

---

how the quantitative analysis provided support the claimed levels of intensity for the reported selling activities; (7) annual historical expense data reflecting average expenses incurred during a three-year period prior to the beginning of the POR for normal expenses for a selling activity that was not performed during the POR.

*Corrosion-Resistant Steel Products From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 15114 (Mar. 17, 2020), and accompanying Issues and Decision Memorandum at Comment 4 (emphasis added).  Again, the Department made no such requests of Prolamsa in the review on appeal here.

the prices between HM Channels 1-3 and HM Channel 4.[3]  *See* Nucor Comments at 12.

However, Prolamsa already answered the question on whether prices vary based on channel of

distribution in its *Section A Response*, and the Department did not seek further clarification on

this point.  Prolamsa explained "how prices vary and why," stating that higher prices charged for

sales through HM Channel 4 "reflected the significant, additional selling activities performed in

relation to sales through HM Channel 4, as well as the additional production costs incurred to

manufacture the parts."  *Section A Response* at A-22.  The fact that part of the price difference

between sales through HM Channels 1-3 and HM Channel 4 is related to manufacturing costs is

not surprising and has no impact on the validity of Prolamsa's LOT claim.

Notably, Nucor cites no legal basis for its claim that a respondent must show an exact

correlation between selling activities and price differences, or requiring a 1-to-1 ratio in the

differences in selling expenses and sales prices.  In fact, the Department rejected this same

argument when Nucor made it during the remand:

---

[3]  Multiple times in its comments, Nucor cites its calculated price difference between sales
through HM Channels 1-3 and HM Channel 4 as [   ]%.  Nucor cites no record evidence to
support this analysis, except for comments submitted to the Department on the draft remand
redetermination.  *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from
Mexico: Comments on Draft Results of Redetermination*, Mar. 17, 2022 (RCR 10, 11; RPR 6).
Nucor does not cite where its analysis of Prolamsa's data comes from (*i.e.,* which databases were
used).  In any case, this calculation and all comments based on it should be considered untimely
new factual information, and not considered in this Court's determination.  Nucor's analysis of
Prolamsa's data "manipulated existing record evidence" for the purposes of "rebut{ting} existing
record evidence."  *See Stupp Corp. v. United States*, 359 F. Supp. 3d 1293, 1300-01 (Ct. Int'l
Trade 2019).  Similar to the Department's rejection of the respondent's case brief in *Stupp Corp.*
for including manipulated record evidence for the purpose of rebutting the Department's
analysis, Nucor's analysis should be rejected from the record because pursuant to the
requirements of 19 C.F.R. § 351.301(c)(5), Nucor did not describe the type of factual
information provided, nor did it submit this information by the deadline of 30 days prior to the
preliminary results of the administrative review.  *Id.*  The Court of Appeals for the Federal
Circuit affirmed the Court's decision on this issue in *Stupp Corp. v. United States*, 5 F.4th 1341,
1350-51 (Fed. Cir. 2021).

> Nucor points to the magnitude of individual quantitative differences in selling activities to the magnitude of prices; however, it is not Commerce's practice to parse out each individual selling activity and determine whether any or all of these selling activities can explain the majority of differences in prices between different LOTs.  Rather, Commerce examines the record as a whole (*e.g.*, both the quantitative and qualitative data) to determine whether the selling activities have an effect on price comparability such that an LOT adjustment is appropriate.

*Remand Redetermination* at 20.[4]  As the Department makes clear, Nucor ignores the significant qualitative information on the record that corroborates Prolamsa's analysis of selling expenses, and which collectively supports the conclusion that Prolamsa performed significant additional selling activities, and selling activities at a higher intensities, for its sales through HM Channel 4 compared to its sales through HM Channels 1-3.   Prolamsa summarized this significant supporting documentation in its initial brief.  *See* Prolamsa Br. at 14 – 19.

In addition, this Court has previously noted its concern in focusing only on quantitative data in LOT analyses.  *See Alloy Piping Prods. v. United States*, 33 C.I.T. 349, 357 (2009) ("If Commerce, or this Court, in reviewing an administrative determination, were to narrow the focus of its LOT analysis to selling expenses, it could act contrary to law and cause misleading results.  Expenses do not necessarily translate directly into activities, nor do they capture the intensity of the activities.").

In addition, the Department accepted similar evidence, which Nucor has not challenged in an appeal, in the 2018 – 2019 administrative review of Prolamsa :

---

[4]   This reasoning is also supported by other decisions issued by the Department, such as *Corrosion-Resistant Steel Products from the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 15114 (Mar.17, 2020), and accompanying Issues and Decision Memorandum at Comment 4 (finding that the respondent's selling activities were supported by a quantitative analysis that based on indirect selling expenses, "even though indirect selling expense worksheet allocates sales overhead expenses based on a rate derived from traceable expenses (*e.g.*, wages) rather than based on activities performed.").

Specifically, we found that the selling expenses Prolamsa incurred for industrial products were substantially higher than those incurred for commercial products, as a percentage of corresponding sales value.  Similarly, the salary and benefits costs incurred for industrial products were substantially higher than those incurred for commercial products as a percentage of corresponding sales value.

Because Prolamsa qualitatively reported that it performed certain selling activities for industrial customers at a higher level of intensity, we find that the quantitative analysis it provided showing that these activities result in a higher rate of both selling expenses incurred and salary and benefits cost, incurred on a per-sales-dollar sold, than the activities performed for commercial customers supports Prolamsa's assertions.   Prolamsa also provided a calculation showing the commercial- and industrial-staff headcount as a percentage of total sales.  We find that Prolamsa's headcount calculation for industrial products was substantially higher than that calculated for commercial products, as a percentage of corresponding sales value; thus, we note that the calculation supports Prolamsa's reported POR salary and benefits costs incurred to sell to both commercial and industrial customers.  We find that this result further supports Prolamsa's LOT claim by corroborating the qualitative selling activities it performed.  Thus, we continue to find that Prolamsa provided adequate quantitative data in support of its LOT claim.

See *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico: Final Results of Antidumping Duty Administrative Review; 2018–2019*, 86 Fed. Reg. 41448 (Aug. 2, 2021), and accompanying Issues and Decision Memorandum at 30-31.

Second, Nucor claims that the quantitative analysis Prolamsa provided with respect to inventory turnover does not adequately support Prolamsa's LOT claim.  Nucor Comments at 13-14.  In particular, Nucor maintains that the inventory turnover calculation provided in Prolamsa's *Supplemental Section A Response* is not reflected in its sales databases or in Prolamsa's financial statements.  Nucor Comments at 13.  Moreover, Nucor suggests that the differences in inventory turnover do not explain the precise price differences among products sold within HM Channels 1-3 and HM Channel 4.  Nucor again imposes requirements for maintaining a LOT claim that do not exist in the Department's practice.  As the Department explained with respect to reporting inventory carrying costs in sales databases:

> {W}e do not request inventory carrying cost information relevant to the issue here (*i.e.*, Prolamsa's performance of just-in-time delivery and the quantitative support Prolamsa provided to demonstrate that Prolamsa performed this activity at a high level). Here, we find that Prolamsa's inventory turnover data contained in Prolamsa's October 21, 2019 SAQR substantiate its claim that, in order to provide just-in-time delivery to its HM channel 4 customers, it maintained an appropriate level of inventory on hand.

*Remand Redetermination* at 19.

Nucor's claim that the Department's analysis confuses price differences according to differences in manufacturing costs (known as a difference in merchandise (or "DIFMER") adjustment) with LOT is simply incorrect. Nucor Comments at 14. As noted above, Prolamsa's inventory turnover calculation corroborates the qualitative information it provided with respect to inventory maintenance and just-in-time delivery, namely that Prolamsa must maintain additional inventory for products sold through HM Channel 4 to account for quick delivery to these customers (causing a slower inventory turnover). *See Supplemental Section A Response* at 17 and Exhibit Supp. A-8. It does not intend to explain differences in manufacturing costs.

## B. The Department's *Remand Redetermination* Appropriately Considered All LOT Evidence on the Record

Nucor attempts to further discredit the Department's analysis in claiming that it "did not fully engage with detracting information when making its remand determination." Nucor Comments at 15. Nucor claims that the price differences between sales through HM Channels 1-3 and HM Channel 4 are due to differences in the cost of production, rather than differences in LOT, because it is the "far more plausible explanation." *Id.* However, the evidence that Nucor cites has been considered by the Department, and rejected, as described in the *Remand Redetermination* and above in Section III.A. *See Remand Redetermination* at 17-21.

Moreover, rejecting Nucor's argument does not render the Department's analysis deficient because it did not find Nucor's evidence as compelling as Nucor claims. In arguing

otherwise, Nucor misstates the proper standard of review.  Even if the totality of the evidence "does not illuminate a black-and-white answer to a disputed issue, it is the role of the expert factfinder . . . to decide which side's evidence to believe."  *Max Fortune Indus. LTD v. United States*, 853 F. Supp. 2d 1258, 1263 (Ct. Int'l Trade 2012) (quoting *Nippon Steel Corp. et al. v. United States*, 458 F.3d 1345, 1359 (Fed. Cir. 2006)).  Moreover, even if it were "possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent {the Department's} determination from being supported by substantial evidence."  *Id.* at 1263-64 (quoting *Nippon Steel Corp. et al.*, 548 Fed. 3d at 358).  Given the extent of the Department's analysis of both the quantitative and qualitative evidence of the record, its conclusion with respect to Prolamsa's LOT claim is supported by substantial evidence.  It also considered Nucor's comments on the draft remand redetermination and explained why those arguments were unavailing.  *See Remand Redetermination* at 17-21.

## C.    The Department's *Remand Redetermination* Does Not Rely on Vague and Conclusory Inferences

In the *Remand Redetermination,* the Department properly reconsidered its totality of the evidence analysis, and engaged with the significant qualitative and quantitative record evidence, concluding that Prolamsa performed nine out of the 14 reported selling activities at a high level of intensity for its home-market sales through HM Channel 4, as opposed to home-market sales through HM Channels 1-3 (personnel training/exchange, engineering services, technical assistance, after-sales service, qualification requirements, inventory maintenance, freight and delivery, just-in-time delivery, and order input/processing).  *See Remand Redetermination* at 3-11, 17-21.  Based on this revised and detailed analysis, the Department's findings with respect to Prolamsa's LOT claim are no longer vague and conclusory.

Yet, Nucor claims that the *Remand Redetermination* "suffers from the same deficiency that precipitated the Court's remand of Commerce's final determination{,}" pointing to alleged "inferences that are vague and conclusory" in the Department's discussion of Prolamsa's quantitative evidence.   Nucor Comments at 17.   Nucor's alleged "inferences" are various references to the fact the Department considered the "record evidence as a whole," or other, similar turns of phrase when concluding that Prolamsa's sufficiently supported its LOT claim. *Id.*

The Department's deficient reasoning in the *Final Results* is easily distinguished from the *Remand Redetermination*.  This Court found that the Department's reliance on the "totality of the circumstances" standard in the *Final Results* was vague and conclusory because it was wholly ***"unexplained"*** and did not identify factual findings that it purported to be "reversing or abandoning." *Productos Laminados de Monterrey S.A. de C.V. v. United States*, 554 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021) (emphasis added).   In the *Remand Redetermination*, the Department considered the evidence on the record, both qualitative and quantitative, explained and analyzed the evidence provided, and determined that, when taken together, Prolamsa's LOT claim was sufficiently supported.  Failing to consider, or even acknowledge the existence of certain evidence, as the Department did in the *Final Results*, is entirely different from asking this Court to reweigh the evidence as Nucor advocates.  The Court may not "reweigh the evidence or . . . reconsider questions of fact anew." *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1377 (Fed. Cir. 2015) (quoting *Trent Tube Div. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 815 (Fed. Cir. 1992)).

Nucor also relies on *Shijiazhuang Goodman Trading Co. v. United States*, 172 F. Supp. 3d 1363 (Ct. Int'l Trade 2016) to support that its listed alleged inferences are vague and

conclusory because "their link to record evidence is attenuated." Nucor Comments at 18. However, in *Shijiazhuang Goodman Trading*, the Court found that there was no connection between the facts found and the inference made in that case, which led to the determination that a respondent's sales made were not bona fide. 172 F. Supp. 3d at 1378. Here, Nucor's allegations of vague and conclusory inferences ignore the pages of accompanying analysis and factual findings that led the Department to conclude that the totality of the circumstances supported Prolamsa's LOT claim. *See Remand Redetermination* at 3-14, 17-21. In particular, the Department reviewed and described the quantitative evidence that Prolamsa provided on the record, and described how it supported Prolamsa's LOT claims. *See id.* at 11, 17-21. The Department also responded to similar arguments from Nucor that were submitted in opposition to the Department's draft remand redetermination. *See id.* at 17-21. Accordingly, the Department's conclusions are supported by substantial evidence.

**IV.   CONCLUSION**

For the reasons discussed above, Plaintiff respectfully requests that this Court affirm the

Department's *Remand Redetermination*.

Respectfully submitted,

WHITE AND CASE LLP

 /s/ David E. Bond
David E. Bond
Allison J.G. Kepkay

WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to Plaintiff Productos Laminados de
Monterrey S.A. de C.V.

Date: May 24, 2022

CERTIFICATE OF COMPLIANCE

I, David E. Bond, certify that the attached brief complies with the word limitation

requirement, as stated in the Standard Chambers Procedures.  The word count for Prolamsa's

Response Comments on Remand Redetermination, as computed by the White & Case word

processing system (Microsoft Word 2016) and manual tally, is 4,356 (exclusive of the table of

contents, table of authorities, and counsel's signature block).


  /s/ David E. Bond
David E. Bond